UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
GARY MARK SKALABAN           :
   Plaintiff,                :
                             :
v.                           : Civil No. 3:02CV1450 (AVC)
                             :
THE DEPARTMENT OF CHILDREN   :
AND FAMILIES, KRISTINE       :
RAGALIA, JOSE APARICIO, JANE :
GOODELL, and LIZA FRANK      :
   Defendants.               :
```

**RULING ON THE DEFENDANTS' MOTION TO DISMISS**

This is an action for damages. It is brought pursuant to 42 U.S.C. § 1983, and alleges that the defendants, the Department of Children and Families ("DCF"), Kristine Ragalia, Jose Aparicio, Jane Goodell, and Liza Frank violated the pro-se plaintiff's, Gary Mark Skalaban's, Fourth, Eighth and Fourteenth Amendment rights. The defendants have filed the within motion to dismiss (document no. 17) pursuant to Fed. R. Civ. P. 12(b)(6) contending that the complaint fails to state a cause of action upon which relief can be granted.

The issues presented are: (1) whether the Eleventh Amendment bars the causes of action asserted against the DCF and the defendants in their official capacities; (2) whether the allegations that the DCF failed to adequately protect the physical well-being of Skalaban's son gives rise to a cause of action that the defendants violated the plaintiff's Fourteenth Amendment rights; (3) whether the cause of action based on a

1

violation of the plaintiff's Fourth Amendment rights should be dismissed because it does not allege that the plaintiff was seized; (4) whether the cause of action based on a violation of the plaintiff's Eighth Amendment rights should be dismissed because it does not allege cruel and unusual punishment imposed after conviction; and (5) whether the allegations that the defendants created a false neglect petition give rise to a cause of action that the defendants violated the plaintiff's Fourteenth Amendment rights.

For the reasons that hereinafter follow the court concludes that: (1) the causes of action asserted against the DCF and the defendants in their official capacity are barred under the Eleventh Amendment; (2) the failure of the DCF to adequately protect Skalaban's son from injury does not give rise to a Fourteenth Amendment cause of action; (3) the Fourth Amendment cause of action fails because the plaintiff has not alleged that he was seized; (4) the Eighth Amendment cause of action fails because the plaintiff does not allege that he suffered cruel and unusual punishment following a criminal conviction; and (5) the allegations that the defendants filed a false neglect petition fail to state a cause of action for a violation of the plaintiff's Fourteenth Amendment rights.  The motion to dismiss (document no. 17) is therefore GRANTED.

**FACTS**

The complaint alleges the following: Skalaban is the father of Cameron Warzecha. In the Summer of 2001, the DCF received a phone call informing them that Cameron Warzecha was being neglected by his mother, JoAnn Warzecha. The DCF assigned Jose Aparicio, an investigator with the DCF, to investigate the claim of neglect. At some time in October or November of 2001, the DCF received an additional report that JoAnn Warzecha was abusing Cameron Warzecha. In December 2001, the DCF became aware that, in violation of a safety compliance set by the DCF, JoAnn Warzecha had left a shelter recommended to her by the DCF. At the same time, JoAnn Warzecha informed Aparicio that she was unwilling to address her substance abuse and mental health issues.

In January 2002, the Middletown Police Department informed the DCF that JoAnn Warzecha was suffering from depression and was addicted to narcotics. Soon thereafter, the DCF transported JoAnn Warzecha to the Rushford Center for Substance Abuse Evaluation. Based on an evaluation undertaken at the Rushford Center, it was determined that JoAnn Warzecha tested positive for the presence of various drugs, including barbiturates and morphine.

On January 7, 2002, the DCF recommended residential treatment for JoAnn Warzecha. JoAnn Warzecha refused to

participate. On January 15, 2002, she did not appear for a scheduled intake appointment with "WCC".[1] On January 22, 2002, Skalaban informed a DCF investigator, Jane Goodell, of "JoAnn Warzecha's serious abuse of drugs and her potential harm to his 'own' son." That same day, JoAnn Warzecha's doctor informed the DCF that JoAnn Warzecha was "abusing her prescription medication."

During the period from February 11, 2002 to May 2, 2002, a DCF representative visited the home of JoAnn Warzecha and instructed her to "address her substance and mental health issues." JoAnn Warzecha did not heed the advice. At some point during the months of March and April of 2002, Skalaban inquired of Liza Frank, an employee of DCF, as to Cameron Warzecha's condition. Frank falsely informed Skalaban that "Cameron is doing fine."

The DCF prepared a neglect petition that was dated March 26, 2002. In that petition, the DCF "falsely accused [Skalaban] of physically abusing his son Cameron Warzecha and that [Skalaban] was charged in the past with the crime of risk of injury." In addition, the neglect petition also "falsely accused [Skalaban] of currently being incarcerated for the charge of risk of injury, sexual assault, and assault III." "The petition [also] accused that Cameron Warzecha was being denied the proper care

---

[1] It is not clear from the complaint what the acronym WCC is intended to indicate.

physically, educationally, and emotionally; and that he was living under conditions, circumstances, or associations injurious to his well being.  Lastly, the [DCF] falsely stated that their department [had] been dealing with [Skalaban's] family since 1988 (a time within which the plaintiff had no knowledge of [JoAnn] Warzecha)."

On May 9, 2002, Allen Ruske, Cameron Warzecha's older brother, visited JoAnn Warzecha's residence.  At the residence, Ruske discovered that JoAnn Warzecha was incoherent and that the apartment was "extremely filthy."  Ruske also discovered that Cameron Warzecha had been bitten in the forehead by a dog, and also that he had a bruise on his chin.  When Ruske inquired as to how he got the bruise, Cameron Warzecha stated that, "Mommy did it."  Ruske immediately took Cameron Warzecha to the hospital.  After Ruske informed the hospital personnel of Cameron Warzecha's statements, the hospital called the DCF hotline.

After receiving the phone call, DCF personnel issued a 96 hour hold.  The 96 hour hold resulted in the DCF taking full custody of Cameron Warzecha because it was determined that JoAnn Warzecha was unable to adequately care for Cameron Warzecha.  "There were a total of six individual case workers/investigators assigned to the Warzecha case over an eight month period leading up to Cameron's injury.  The names of those individuals include, but are not limited to: Jill Amaio, Karen Keatly, Jane Goodell,

Jose Aparicio, Theodore Sanford, and Liza Frank."

On August 19, 2002, Skalaban filed the instant lawsuit. The first count alleges that the defendants violated his Fourteenth Amendment rights by failing to fulfill its responsibility in protecting his son. The second count alleges that the defendants violated his Fourteenth, Eighth and Fourth Amendment rights by making false claims in a neglect petition. The third count alleges that the defendants violated the plaintiff's Fourteenth Amendment rights by improperly assigning too many individuals to the claim of neglect.

## **STANDARD**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) involves a determination as to whether the plaintiff has stated a claim upon which relief may be granted. Fischman v. Blue Cross Blue Shield, 755 F. Supp. 528 (D. Conn. 1990). The motion must be decided solely on the facts alleged. Goldman v. Belden, 754 F.2d 1059, 1065 (2d Cir. 1985). A court must assume all factual allegations in the complaint to be true and must draw all reasonable inferences in favor of the non-moving party. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). Such a motion should be granted only when no set of facts consistent with the allegations could be proven which would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). The issue is not

6

whether the plaintiff will prevail, but whether he should have the opportunity to prove his claims. Conley v. Gibson, 355 U.S. 41, 45, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).

## DISCUSSION

1.  Eleventh Amendment

The defendants first contend that any causes of action asserted against the DCF and the defendants in their official capacity "are barred by the Eleventh Amendment." Specifically, the defendants contend that the "Eleventh Amendment bars [42 U.S.C. § 1983 actions] against a state unless the state has waived immunity." Thus, because the "state of Connecticut has not waived its immunity," the complaint against the DCF "and the named defendants in their official capacities," must be dismissed.

The plaintiff does not specifically respond to this argument.

Pursuant to the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordon, 415 U.S. 651, 663 (1974); Hans v. Louisiana, 134 U.S. 1, 18 (1890). Additionally, although Congress may override Eleventh Amendment immunity pursuant to section five of the Fourteenth Amendment, nothing in 42 U.S.C. § 1983 abrogates Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332, 341

7

(1979).  Consequently, pursuant to the Eleventh Amendment, state agencies are immune from lawsuits that seek retrospective relief under section 1983.  See, e.g., K & A Radiologic Technology Services, Inc. v. Commissioner of Dept. of Health of State of N.Y., 189 F.3d 273, 278 (2d Cir. 1999).

"Agencies of the state . . . are entitled to assert the state's Eleventh Amendment immunity where, for practical purposes, the agency is the alter ego of the state and the state is the real party in interest." Santiago v. New York State Dept. Correctional Serv., 945 F.2d 25, 28 n.1 (2d Cir. 1991).  Thus, state agencies are generally immune from suit pursuant to the Eleventh Amendment.  See, e.g., Ford Motor Co. v. Department of Treasury of State of Indiana, 323 U.S. 459, 462-63 (1945). Likewise, section 1983 causes of action asserted against a state employee in their official capacities are barred pursuant to the Eleventh Amendment.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985); Spencer v. Doe, 139 F.3d 107, 111 (2d Cir. 1998).  "[T]he real party in interest in an official- capacity suit is the governmental entity and not the named official. . . . Thus, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Frank v. Relin, 1 F.3d 1317, 1326 (2d Cir. 1998) (citations and internal quotation marks omitted).  Nevertheless, "the Eleventh Amendment does not extend to a suit against a state official in his [or her] individual

8

capacity, even when the conduct complained of was carried out in accordance with state law." Ford v. Reynolds, 316 F.3d 351, 355 (2d Cir. 2003) (citation omitted).

Applying these principles, the court concludes that the causes of action asserted against the DCF and the defendants in their official capacity are barred pursuant to the Eleventh Amendment. First, the DCF is a state agency, see Conn. Gen. Stat. § 4-38c (DCF is an executive branch department of state government), and is therefore immune from suit. Additionally, there is nothing to indicate that the state of Connecticut has consented to suit under section 1983. Accordingly, the motion to dismiss the complaint against the DCF and the defendants in their official capacity is GRANTED.

2.   First and Third Counts: Fourteenth Amendment

The defendants next contend that the first and third counts should be dismissed because the allegations do "not rise to a violation of the plaintiff's substantive due process rights." Specifically, the allegations of the defendants' failure to "protect the [plaintiff's son] from violence simply [do] not constitute a violation of the Due Process Clause."

The plaintiff responds that the defendants are "fully responsible for not being forceful or committed enough in seeing that [the JoAnn Warzecha] got all the necessary and proper help in order to take care of [his] son."

9

In Deshaney v. Winnebago County Dept. Of Social Serv., 489 U.S. 189 (1989), on facts similar to the instant allegations, the United States Supreme Court concluded that, "[n]othing in the language of the Due Process clause itself requires the state to protect the life, liberty, and property of its citizens against invasion by private actors." Deshaney v. Winnebago County Dept. Of Social Serv., 489 U.S. 189, 195 (1989). In Deshaney, the plaintiffs, Joshua Deshaney and his mother, alleged that the social service department had, in the face of overwhelming evidence of abuse, permitted the then-four-year-old Joshua to remain in the custody of his abusive father until Joshua was beaten so severely that he almost died. Deshaney v. Winnebago County Dept. Of Social Serv., 489 U.S. 189, 192-94. Thus, according to the complaint, the department of social services had "deprived Joshua of his liberty without due process of law, in violation of his rights under the Fourteenth Amendment, by failing to intervene to protect him against a risk of violence at his father's hand of which they knew or should have known." Deshaney v. Winnebago County Dept. Of Social Serv., 489 U.S. 189, 193.

The Deshaney court rejected this claim, noting first that the due process clause was intended as a limitation on the state's power to act, "not as a guarantee of certain minimal levels of safety and security." Deshaney v. Winnebago County

Dept. Of Social Serv., 489 U.S. 189, 195.  The court went on, stating that "[i]f the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them."  Deshaney v. Winnebago County Dept. Of Social Serv., 489 U.S. 189, 196-7.  Thus, the court concluded, "[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  Deshaney v. Winnebago County Dept. Of Social Serv., 489 U.S. 189, 197.

Applying these principles, the court concludes that the first and third counts of the complaint must be dismissed.  The first count of the complaint alleges that the DCF "neglected its responsibilities to insure the safety and security of [the plaintiff's son despite] the plaintiff's warning of abuse and the [DCF's] records of the mother's . . . past history of risk of injury and child neglect."  Likewise, the third count alleges that the DCF failed to "thoroughly and accurately discern the eventual injuries sustained [by the plaintiff's son at the hands of his] . . . mother" because DCF had assigned too many case workers, at too many different times.  Thus, both counts allege that the DCF's failure to perform certain duties eventually led to the plaintiff's son being injured by his mother, a private

11

actor. The Deshaney court, however, made clear that the due process clause is "not . . . a guarantee of certain minimal levels of safety and security," Deshaney v. Winnebago County Dept. Of Social Serv., 489 U.S. 189, 195, and, thus, a state's "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Deshaney v. Winnebago County Dept. Of Social Serv., 489 U.S. 189, 196. Consequently, the court concludes that counts one and three must be dismissed pursuant to Deshaney.[2] The defendants' motion to dismiss counts one and three is therefore GRANTED.[3]

3.   The Second Count

---

[2] The first and third counts also allege a violation of the plaintiff's due process rights guaranteed under the Connecticut constitution. The Connecticut constitution "may, in certain instances, afford greater substantive due process rights than the federal constitution." Ramos v. Vernon, 254 Conn. 799, 836 (2000). Nevertheless, the plaintiff has provided no argument, case law, or other evidence indicating that, under the circumstances of this case, greater rights are afforded under the due process clause of the Connecticut constitution as compared to the federal constitution. Moreover, the court's own research has found no case law indicating that this is the case. The court therefore assumes that the Connecticut and federal constitutions are coextensive and dismisses the state constitutional claims for the same reasons as the federal constitutional claims were dismissed.

[3] The court recognizes that there are two exceptions to the Deshaney rule. See Deshaney v. Winnebago County Dept. of Social Serv., 489 U.S. 189, 198 (1989) (noting the "special relationship" exception to Deshaney rule); Dwares v. City of New York, 985 F.2d 94, 99 (2d. 1993) (noting the "state created danger" exception to Deshaney rule). Nevertheless, neither of those exceptions have been raised in this case. Additionally, neither of those exceptions would prove successful. See Deshaney v. Winnebago County Dept. of Social Serv., 489 U.S. 189, 198 (1989) (rejecting application of special relationship exception on facts similar to this case); Teresa T. v. Ragaglia, 154 F. Supp. 2d 290, 303 (D. Conn. 2001) (rejecting application of state created danger exception on facts similar to this case).

12

The second count of the complaint alleges causes of action premised on violations of the plaintiff's Fourth, Eighth and Fourteenth Amendment rights based on the DCF's alleged creation of a neglect petition that included false statements. The defendants contend that the Fourth Amendment claim, the Eighth claim, and the Fourteenth Amendment claim should all be dismissed, albeit for different reasons. The court addresses each of these arguments separately.

A.  <u>Fourth Amendment Cause of Action</u>

The defendants contend that the portion of the second count premised on a violation of the Fourth Amendment must be dismissed. Specifically, the defendants contend that, although the Fourth Amendment "applies in the context of the seizure of a child by government-agency official during civil child-abuse or maltreatment investigation," because the plaintiff "was not searched or seized in any way by the defendants," the Fourth Amendment cause of action must be dismissed.

The plaintiff fails to specifically respond to this argument.

"Section 1983 was intended to [create] a species of tort liability' in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution. . . . The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable

13

seizure of the person--i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty.  A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of 'seizure.'" (internal citations and quotation marks omitted).  Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995) (internal citations and quotation marks omitted); see also Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002).

Consequently, absent the predicate deprivation of liberty, or "seizure," a plaintiff may not maintain an action for malicious prosecution founded on the Fourth Amendment.  See Singer v. Fulton County Sheriff, 63 F.3d 110, 116-17 (2d Cir. 1995).  Likewise, seizure, or arrest, is a necessary element for a Fourth Amendment claim of false arrest.  See, e.g., Shattuck v. Town of Stratford, 233 F. Supp. 2d 301, 306 (D.Conn. 2002).  It is, after all, the seizure or arrest component of these causes of action that implicates the Fourth Amendment.  See Singer v. Fulton County Sheriff, 63 F.3d 110, 116-7 (2d Cir. 1995).

Applying these principles the second count of the complaint that alleges a violation of the Fourth Amendment must be dismissed.  The second count essentially alleges that the defendants created a neglect petition that contained false information regarding Skalaban.  These allegations are simply

14

insufficient to give rise to a Fourth Amendment cause of action. Because the second count fails to allege the necessary elements for a Fourth Amendment cause of action, the defendants' motion to dismiss the Fourth Amendment cause of action is GRANTED.

    B.   <u>The Eighth Amendment Cause of Action</u>

The defendants next contend that the portion of the plaintiff's second count that is premised on the Eighth Amendment must be dismissed. Specifically, the defendants contend that the Eighth Amendment "is simply not applicable . . . [because the plaintiff has not alleged] that the DCF, or its employees, punished him in any way."

The plaintiff fails to specifically respond to this argument.

The Eighth Amendment to the United States Constitution states that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." As the complaint does not implicate the issues of bail or fines, the relevant inquiry is therefore related to cruel and unusual punishment. "[T]he Cruel and Unusual Punishments Clause circumscribes the criminal process in three ways: First, it limits the kinds of punishment that can be imposed on those convicted of crimes . . . ; second, it proscribes punishment grossly disproportionate to the severity of the crime . . . ; and third, it imposes substantive limits on what can be made criminal

and punished as such. . . . We have recognized the last limitation as one to be applied sparingly. The primary purpose of the Cruel and Unusual Punishments Clause has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes . . . ." Ingraham v. Wright, 430 U.S. 651, 667 (1977). These protections, however, are only applicable after the state has made a formal adjudication of guilt. See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).

Applying these principles, the court concludes that the cause of action based on the Eighth Amendment must be dismissed. First, the complaint fails to articulate what actions, aside from the false report of the DCF, constitute the alleged cruel and unusual punishment. More fundamentally, however, there is nothing in the complaint indicating that the alleged cruel and unusual punishment took place after a formal adjudication of guilt. Consequently, putting aside the question of what actions constitute the alleged cruel and unusual punishment, the cause of action premised on the Eighth Amendment cannot be maintained as there has been no adjudication of guilt. Therefore, the defendants' motion to dismiss the portion of the second count alleging a violation of the Eighth Amendment is GRANTED.

  C. The Fourteenth Amendment Cause of Action

The defendants next contend that the portion of the second

count that alleges a violation of the Fourteenth Amendment should be dismissed. Specifically, the defendants contend that the cause of action fails to allege a constitutional violation and, to the extent that it does, it is barred under the doctrine of qualified immunity.

The plaintiff responds that "[p]resenting misrepresentations and falsehoods to a court . . . certainly does violate due process and [the defendants are not] . . . immune from any consequence of their actions . . . when purposeful and harmful."

"A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all. . . . In the event that this threshold determination reveals a possible constitutional violation, [a] qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law. . . . This immunity determination, in turn, depends largely on whether the law was defined with reasonable clarity at the time of the disputed events and on whether a reasonable defendant would have understood from the existing law that the conduct was unlawful." Wilkinson v. Russell, 182 F.3d 89, 102-3 (2d Cir. 1999) (internal citations, quotation marks, and footnote omitted).

Applying these principles, the court concludes that the

complaint fails because it does not allege a cognizable constitutional violation. The second count of the complaint alleges essentially that the DCF and DCF employees made false allegations in a neglect petition dated March 26, 2002. There are no further allegations. The plaintiff has provided no case law indicating that the mere act of making false statements in a neglect petition give rise to a Fourteenth Amendment cause of action. Further, the court's research has discovered no case that indicates that the allegations of the second count give rise to Fourteenth Amendment cause of action. There are indeed cases holding that "a parent's interest in the custody of a child [is] a constitutionally protected liberty interest subject to due process protection." Wilkinson v. Russell, 182 F.3d 89, 103 (2d Cir. 1999); see also Kia P. V. McIntyre, 235 F.3d 749, (2d Cir. 2000); Tenenbaum v. Williams, 193 F.3d 581 (2d Cir. 1999). Nevertheless, in those cases there is some factual allegation indicating actual interference with the custody of a child, i.e., removal. The complaint in this matter, however, alleges no such interference with the plaintiff's rights. Accordingly, the court concludes that the complaint in this matter does not allege a violation of the Fourteenth Amendment. Consequently, the defendants' motion to dismiss is GRANTED.[4]

---

[4] The defendants further contend that the Fourteenth Amendment claim should be dismissed under the doctrine of absolute immunity. The defendants also contend that, pursuant to the holding in Gentner v. Shulman, 55 F.3d 87, 89 (2d Cir. 1995), this court lacks subject

18

**CONCLUSION**

Based on the foregoing reasons, the defendant's motion to dismiss (document no. 17) is GRANTED.

It is so ordered, this 2nd day of February, 2004, at Hartford, Connecticut.

                                       /s/ AVC
                                       Alfred V. Covello
                                       United States District Judge

---

matter jurisdiction to review the plaintiff's fourteenth Amendment claim because it would require this court to review a state court decision. Having concluded that the plaintiff's complaint should be dismissed on other grounds, the court need not address these arguments.